The next case is United States v. Graham. Good morning, your honors. May it please the court. I'm Lucas Anderson here for Appellant Leron Graham. And I'd like to begin by addressing a couple of the recent events relating to this appeal. And now just assuming for a moment now that we succeed on the merits of our remaining point. The remedy for Sixth Amendment violation under Strickland v. Washington should be appropriately tailored to the injuries suffered. In this case, and at this point in these somewhat unusual appellate proceedings where a clemency order, reducing the prison term, was issued midway through the appeal process, I think the only potential remedy I can now ask for, and the only one that wouldn't put my client in a worse situation, is one, a determination that there is a reasonable probability that the Section 851 enhancement resulted from a Strickland error, and two, an order that the district court therefore be directed to determine whether an adjustment to the supervised release term is warranted based on a five-year rather than a ten-year mandatory minimum. With respect to the motion that I filed last month, where I requested what I believe to be appropriate relief in the face of extraordinary circumstances. You describe it as moot, but are you just withdrawing the argument on the crack cocaine? Correct. It would be more technically precise to say that I can no longer establish a reasonable probability under the prejudice problem. So you're withdrawing the argument? Yes. With respect to the second point of appeal. Not with respect to the first. And the first one only relates to our client's term of supervised release, because it has no effect on the guidelines or the mandatory minimum prison sentence applicable to all accounts. With respect to the motion I filed last month, that was relief I requested in light of extraordinary circumstances that had arisen that morning, and possible circumstances that I do not want my client to have to face once this appeal is over and he doesn't have the right to an attorney anymore. I've spoken with my client recently about the advantages and possible disadvantages of seeking further relief, and at this time, our only request is an order from this court that the written judgment be amended to confirm to the terms of the clemency order. If the government has an objection to that, I hope that they'll explain why they think that would prejudice them in any way, and that I'll identify some authority to indicate that this court doesn't have the power to issue such an order. Now, turning to the merits of our remaining point on appeal. I expect that if the government today raises issues that are relevant to the claim that we have actually presented this court in our opening brief, it will have to rely on arguments that were not set forth in its response brief, and that we, therefore, didn't have a sufficient opportunity to reply for. Appellees, no less than appellants, under this court's precedence, waive arguments by not briefing them, and the Supreme Court's decisions relating to the party presentation will confirm that in criminal cases, at least, departures from that principle are ordinarily done to protect a pro se litigant's rights. This court, I believe correctly, applied the party presentation rule in the Ivanhoe case. It's weird, because we certainly have concepts of waiver and abandonment and forfeiture, but generally, the party presentation principle is on us. It doesn't impact how opposing counsel chooses to attack someone else or someone else's arguments. Well, if we've presented arguments, and there are potential counter-arguments, ones that I tried to anticipate, you know, in our reply, but they weren't presented to me, so I didn't have a chance to, the job of this court is to be, as the Supreme Court puts it, a passive instrument of government, the government that decides presented issues, not one that says, okay, there's a reason here that we can affirm this judgment. The government didn't present it to us, but there's a reason that we can find and say, sorry, it's, you know, the job of everybody here, except for defense counsel, is to find a reason to affirm a judgment, and if the government doesn't do its job and present arguments, we're going to find arguments. You can use your time however you want, but I suggest that you make the argument. Yes, well, with respect to our remaining issue in this case, it boils down to two questions under Strickland. First, was it reasonable under prevailing professional norms at the time of these proceedings for a criminal defense attorney to stipulate and convince his skeptical client to stipulate? You look at page 209 of the transcript. This is something my client had to be convinced of, that a prior purse-snatching conviction, a class D felony under state law, amounts to a serious violent felony under federal law when there's no binding authority to support that prophecy. So can you explain this to me? Usually we see, I don't want to say usually, but often I, in effective assistance of counsels in the context of a plea waiver, have to suggest that there wasn't a knowing involuntary. So there's a suggestion that maybe it wasn't well negotiated or maybe it's not appropriately to be appropriately enforced. But you don't actually, you're not asking us to dissolve the plea waiver and start over again. So you seem to be arguing another point, like just the attorney didn't make a good argument or the attorney made a legal error. How does that get around the fact that there was a plea waiver that you are, including an appellate waiver, a plea agreement, I'm sorry, including an appellate waiver that you're not suggesting was involuntarily or inappropriately entered into? Well, the advice my client was given to enter into this plea, pardon, I choked on some water. That's so bad. The advice that my client was given to enter into this plea agreement, this was an enhancement that was mentioned in the indictment and his trial counsel never objected to it. He was advised, even though my client thought, why is this a violent felony? It's not a violent felony under state law. And trial counsel said, we've discussed that, Your Honor. He thinks it's not a violent felony under state law. I have told him that it is a serious violent felony under federal law. And so that's the advice that he received in connection with entering into this plea agreement is one of the reasons why the appeal waiver doesn't apply. We've presented other reasons relating to the scope of this appeal waiver. The fact that at paragraph 44 of the plea agreement, this is page 60 of the appendix, the appeal waiver says that the defendant waives the right to appeal and collaterally attack his sentence. That's one argument. And then including the sentence that he received, comma, notwithstanding the manner in which the court determines the sentence. This doesn't apply to Strickland claims, to arguments my client can present later on saying, wait a minute, the advice that I received from my counsel throughout this process, before, during, after the plea hearing. So can you distinguish the Manzan decision, which seems to suggest, to me at least, that if you are not attacking the plea itself, ineffective assistance of counsel claims may not get you to avoid or circumvent the appellate waiver provision in order to attack the sentence. Can you just help me navigate through that issue? Well, yeah, it's one of the complications about us having two points on appeal, one of which we can no longer prove anymore, is that our other point on appeal related to just the sentencing itself and the fact that my client's attorney, nor the government, stood up and said, you know, we've had this stipulation in this plea agreement. This is, as you point out, a complication now. It's a complication, but it also helps us in one respect, which is that it supports the implication that the government breached its duties under this plea agreement. So did my client's counsel. They said, this is part of the bargain we're going to make with you, Mr. Graham. We are going to also give you this two-level sentence offense-level reduction. And then in the sentencing, the district court said, because nobody presented that argument to him, nobody had stood by that part of the plea agreement, your offense level is higher than the highest. And so that's part of my relatively brief explanation for imposing this sentence. So it prejudiced him in that way, which now is moot. But it also indicates that the government breached its obligations. Graham waived important constitutional rights. He agreed to a sentence that is not as harsh as some people may think he was going to get, but a very harsh C1C plea range in exchange for this promise that his attorney and counsel for the government would stand by this stipulation regarding an offense-level enhancement that they did not stand by. So that is just yet another reason why we think this plea agreement waiver does not apply. I would like to have you articulate as clearly as you can. Are you arguing that trial counsel should have challenged the stipulation before the district court after the agreement was entered into, or that counsel should have negotiated in the first instance a better agreement? You were speaking about the stipulation relating the offense-level enhancement. That was in the plea agreement. They stipulated it in the plea agreement, and they said, we are going to stand by this at sentencing. Then they got to sentencing, and defense counsel didn't stand by it. The reason that's relevant now is because the government didn't stand by it, and we're saying that the government breached its obligations under the agreement, and therefore anything in the agreement, including that appeal waiver, should not be used to say, Mr. Graham, you can't raise arguments on appeal, including Strickland arguments. I mean, the plain text of this appeal waiver doesn't apply to Strickland arguments. It applies to arguments about how the district court exercised its discretion, and the vast majority of the government's response brief is dedicated to counterattacks on claims that we have not made about the district court's exercise of discretion. I don't think there's any fair reading of our brief to even suggest that that's the kind of argument that we have raised. I see my time has well expired. I thank the court. Good morning. May it please the court, my name is Tiffany Lee, and I represent the United States. What we have here is, in essence, an attempt to end run the appellate waiver and the plea agreement that was negotiated by Mr. Graham's attorney along with the government. And Mr. Graham would be hard-pressed to say that he did not get the benefit of his bargain here when he was facing 16 counts in an indictment that charged him various offenses, including sex trafficking, narcotics conspiracy involving fentanyl, heroin, crack cocaine, and cocaine. Under what circumstances can a defendant, in the government's view, challenge a sentence where there's an appeal waiver, but not also challenge the voluntariness of the plea? Are there circumstances? There may be circumstances. For example, if there's something in the record that may suggest ineffective assistance of counsel, this court actually has remanded in an instance in the summary order of United States v. McCullough in somewhat circumstances that are similar to this where there was an issue about whether or not counsel had raised the issue of a career offender enhancement based on case law which suggested that an underlying predicate narcotics crime was not categorically... So a total misunderstanding of the guidelines, for example. Or the case law that was developing below with respect to the guidelines, in which case this court did remand. There were facts in the record to suggest that. But we don't have that here. What we have here is a negotiated plea where, as opposed to what the assistant United States attorney had expressed during the Frey-Laffler colloquy, Mr. Graham could have faced a minimum, a mandatory minimum, depending on how the district court stacked certain counts, if convicted after trial, a mandatory minimum of 27 years, potentially, if he was convicted of a crime that carried a 15-year man-min, and then if he was convicted of two firearms offenses in furtherance. The negotiations here resulted in a Rule 11 C1C stipulated agreement that was subject to approval by the district court in which Mr. Graham was aware that he was just facing the guidelines exposure of 15 years to 22 years. And according to the appellate waiver, he knew that he would be waiving his right to appeal any sentence that was 360 to life or below and a term of supervised release of five years to life and below. And here he got exactly what he wanted in terms of the benefit of the bargain. And to the extent that the record has no evidence, insufficient evidence, to suggest ineffective assistance of counsel, this court should proceed as it normally does in terms of its baseline aversion to handling ineffective assistance of counsel claims on direct appeal and reserve Mr. Graham's rights to approach this in the context of a 2255 proceeding. Unless the court has any further questions for the government, the government rests on its brief. Can you address briefly the argument that here the appeal, the agreement, says that he is forgoing his right to appeal and collateral attack? Does that make any difference? The collateral attack waiver does not, for example, I will say ineffective assistance of counsel claims are always reserved even in the face of an appellate waiver that says bars your right to collaterally attack. The collateral attack is to this sentence. But it does not bar his right to raise ineffective assistance of counsel claims on a 2255. May I ask you actually about the request to amend the judgment in order to confirm this commutation issue? Can you address that? I don't believe that the amendment provisions in terms of this court's jurisdiction vis-a-vis sentencing review encompasses executive orders of clemency. So you're saying that we don't have the jurisdiction? Where is your authority on that? Unfortunately, I don't recall the cases that I did cite in our letter in response to Mr. Graham's application to stay. But the fact of the matter is this commutative executive order of clemency is in order for the Bureau of Prisons to do a calculation on the sentence. And it says that it leaves intact the terms of supervised release. I think you're talking about our appellate jurisdiction, but perhaps not. Could a district court enter a judgment that, among other things, confirms the commutation? I don't believe that the sentencing modification provisions of 3583 really outline a mechanism to amend a sentence in this regard. Well, could the judgment of conviction reflect an understanding by the district court that there is a commutation order? Again, I don't believe so. In the same way that a district court judge can recommend that a defendant be placed or housed in a particular facility, understanding that it's ultimately up to the Bureau of Prisons? Again, I would say I do not believe so only because the right to execute pardons and commutations of sentences by the Constitution rests exclusively with the President of the United States. Well, I'm not talking about the right or really the authority to commute or to pardon. I'm just talking about the authority that seems to me to be within the authority of a district court judge to issue a judgment as it wants. In other words, to reflect my understanding as a district court judge that the sentence has been commuted. Well, similar to— What is the authority that curtails that authority? So similar to there is only very limited circumstances in which a district court could amend a judgment generally. I understand.  Like, for example, even with typographical errors or anything along those lines, you are confined by the rules of criminal procedure. And then in terms of modification of sentences, again, that's circumscribed by statute. So while I— This is not a modification of a sentence, though. I mean, I think that you would agree with that. I would agree with that. It would not be a modification of the sentence. But to the extent—I guess I do not see how that would look because in the judgment, it's not as if the district court could change that term of imprisonment to 150 months. In that paragraph of the judgment and conviction that talks about the term of imprisonment and then that section on supervised release, it's not as if that part could be changed by the district court. You're just asking—you would just be asking the executive to execute what it has already executed in terms of how the sentence will be served. Thank you. Thank you. Thank you, Your Honors. I do recall the cases the government cited in their response to our motion. There is nothing to suggest that this court doesn't have the power to direct a district court to amend its written judgment. My very first assigned case in this court about eight or nine years ago, this court, without me or the government asking for it, directed the district court to amend its judgment with respect to an item that was forfeit. There are limitations— What the government is saying is that with respect to commutations, which are exclusively within the authority of the executive, the district court may not be authorized to amend the judgment, which is the judgment of the sentence, not the commutation. Correct, and we are not asking this court to grant a commutation or to direct the district court to grant a commutation, only to confirm its judgment to the commutation in light of the circumstances that I presented in my motion, including circumstances that the government just didn't mention in its response. I want to emphasize, again, with respect to our other point, the very limited relief remedy that I am now seeking that I read out loud before, but there's nothing written about that. If the court would like further briefing on that, I'm happy to do that. And then finally, I just want to emphasize, in light of a decision I received in another case, one that's not binding on this court, neither of the Strickland prongs depend on a simple yes or no question of whether there was existing on-point authority at the time to definitively establish that counsel would have been guaranteed to succeed if he had raised an appropriate objection at the time. The Strickland opinion itself confirms that the prejudice prong, the reasonable probability prong, doesn't even require a showing that counsel's deficient conduct more likely than not altered the outcome of the case. It's not even a preponderance of the standard. If it were the preponderance of the standard, I still think we would be on solid ground here, given the categorical approach-based arguments that we've raised in our brief, but it is not. And if there are any further questions from the court, I'm happy to address them. Thank you very much. What you just argued seems to be contradicted by the Parisi decision, but maybe I missed it. It is not. The Parisi decision, that was one of the circumstances as to why, under Strickland, counsel's conduct in that case was not objectionably unreasonable. Parisi did not hold that in every case, you just look to see whether there is a binding decision that would say guaranteed counsel would win. And if not, then you can't make a Strickland claim, then there's no prejudice. The Strickland decision itself says, you know, there's not supposed to be rigid guidelines. We can look to ABA standards and things like that, but even those, they don't say what is objectionably reasonable professional conduct for a defense attorney in those situations. You look at all the circumstances, Strickland says. And so if there were a binding on-point decision to say we would have definitely lost, then we don't have much of an argument. But the lack of an on-point binding decision we can point to and say, you know. When you say on-point, what if the question is there's no on-point binding decision and the question is relatively novel? If the question is relatively. Then just briefly take us through the analysis of whether counsel can be ineffective in not raising a novel question of law. In not raising a novel question of law, certainly. If there's a novel question of law that would, under all of the relevant circumstances in this court's judgment, that a defense attorney is something that he or she should raise on behalf of his client. It's a very vague standard, and it's what Strickland says. It says repeatedly, you don't apply these rigid standards. And so if it is a novel question of law, it would depend on how novel is it? How ridiculous or possibly frivolous would the argument have been if it was raised? If it's something. Doesn't it also depend on what other arguments are available to the client? Correct. And there are arguments. There are cases from this court applying the Strickland standard to appellate attorneys. And saying, well, in this case, there was this great argument that you could have raised. Even though the New York Appellate Division had rejected it, I think if you had raised it, it would have gone up to the New York Court of Appeals. And there's a good chance you would have won there. And so the fact that this defense appellate attorney didn't raise it there, that is a thing that we look to in determining whether. And the arguments the counsel did raise. Raised a bunch of frivolous arguments instead. It's a very vague, I understand, standard. But that's the language that Strickland uses. Thank you. Thank you both. And we will take the matter under advisement.